**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                  :
JOSEPH MILAS,                     :    CIVIL ACTION
                                  :
        Petitioner               :
                                  :
    v.                            :    NO.  07-1556
                                  :
JOHN A. PALAKOVICH, et al.,       :
                                  :
        Respondents              :
_____  :

HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

Presently before the Court is a *pro se* Petition for

Writ of Habeas Corpus filed by the Petitioner, Joseph Milas

("Petitioner"), pursuant to 28 U.S.C. section 2254.  Petitioner

is currently incarcerated in the State Correctional Institution

at Smithfield located in Huntingdon, Pennsylvania.  For the

reasons that follow, it is recommended that the Petition should

be denied with prejudice and dismissed without an evidentiary

hearing.

**I.    FACTS AND PROCEDURAL HISTORY**[1]

Petitioner committed four separate robberies at

gunpoint in Philadelphia during the winter and spring of 1997, in

several instances holding a gun or replica thereof directly to

_____

[1]     This information is taken from the Petition for Writ of Habeas
Corpus, the Response thereto, Petitioner's Reply, Respondents' Response to
Petitioner's Reply, and the attachments to those pleadings.  Specifically, we
note that Petitioner has advised that the procedural history as detailed by
the Respondents is substantially correct.  See Petitioner's Reply, p. 3, fn 6.

the victims' heads and/or explicitly threatening to kill them. On March 2, 1998, Petitioner entered a plea of guilty to four counts each of robbery[2] and carrying a firearm on public streets or public property[3] before the Honorable Ricardo C. Jackson. Judge Jackson deferred sentencing to obtain a pre-sentencing report and a mental health evaluation.

On April 23, 1998, Judge Jackson sentenced the Petitioner to consecutive prison terms of five (5) to ten (10) years for each count of robbery and to concurrent sentences of two and a half (2½) to five (5) years for carrying a firearm on public streets or public property.  Petitioner, therefore, was sentenced to an aggregate term of twenty (20) to forty (40) years in prison.  Petitioner did not file an appeal from the judgment of conviction and sentence.

More than five years later, on September 5, 2003, Petitioner filed a *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA").  See 42 Pa. C.S.A. § 9541, et seq.  Counsel was appointed, but after reviewing the record, counsel determined that the issues raised in the petition were without merit and that the petition was untimely filed pursuant to 42 Pa. C.S.A. § 9545(b)(1)(i)-(iii).  Counsel filed a "no merit" letter on April 30, 2004 and petition to withdraw as

---

[2]      See 18 Pa. C.S.A. § 3701.

[3]      See 18 Pa. C.S.A. § 6108.

counsel pursuant to <u>Commonwealth v. Finley</u>, 550 A.2d 213 (Pa. Super. 1988).

The PCRA court notified Petitioner of its intent to dismiss the petition without a hearing on May 4, 2004.  <u>See</u> Pa. R. Crim. P. 907.  The PCRA court subsequently granted permission for counsel to withdraw and dismissed the petition as untimely[4] and frivolous on May 27, 2004.

On June 24, 2004, Petitioner filed a *pro se* appeal of the dismissal in the Superior Court of Pennsylvania.  In connection with this appeal, the PCRA court entered an order on July 1, 2004 directing the Petitioner to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), but he did not respond.  On

_____

[4]      In dismissing the petition, the PCRA court adopted the <u>Finley</u> letter noting that no exceptions to the time filing requirements pursuant to 42 Pa. C.S.A. § 9545(b)(1)(i)-(iii) applied.  More specifically, 42 Pa. C.S.A. § 9545(b)(1)(i)-(iii) excuses the PCRA time-bar when:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa. C.S.A. §§ 9545(b)(1)(i)-(iii).

3

September 15, 2004, the PCRA court issued its opinion, noting that Petitioner's failure to comply with Rule 1925(d) impeded the court's preparation of its Rule 1925(d) opinion.  By unpublished memorandum opinion dated July 21, 2005, the Superior Court affirmed the PCRA court's May 27, 2004 order of dismissal. Commonwealth v. Milas, 883 A.2d 691 (Pa. Super. 2005).

Petitioner did not seek further review in a timely fashion and instead filed a petition for allowance of appeal *nunc pro tunc* with the Supreme Court of Pennsylvania on October 19, 2005.  By order dated December 6, 2005, Petitioner was permitted to file his *allocatur* petition *nunc pro tunc*.  The Pennsylvania Supreme Court denied the petition for allowance of appeal on May 31, 2006. Commonwealth v. Milas, 587 Pa. 721, 899 A.2d 1122 (Pa. 2006).

On August 9, 2006, Petitioner filed a second *pro se* petition under the PCRA.  The PCRA court notified Petitioner of its intent to dismiss the petition as untimely without a hearing on February 16, 2007.  See Pa. R. Crim. P. 907.  On March 30, 2007, the PCRA court entered an order dismissing the second petition as untimely.  Petitioner did not appeal from the order of dismissal.

Petitioner filed the instant Petition for Writ of Habeas Corpus with the Clerk of Court on April 18, 2007.  The Petition before this Court seeks a determination of the following

4

claims: (1) governmental interference based on the prison's alleged denial of access to the law library by "labeling youths housed at Houtzdale as young defendants" and prohibiting paralegal assistance from adult prisoners or staff, which actions Petitioner avers entitle him to equitable tolling of the habeas statute's limitations period; (2) judicial abuse of discretion based on Judge Jackson's alleged disregard of Petitioner's "historical record of mental illness" and alleged IQ of 63; (3) ineffective assistance of counsel and a due process violation based on plea counsel's alleged failure to inform Petitioner of his right to withdraw his guilty pleas, to file a motion for reconsideration of sentence, or to "adequately investigate [Petitioner's] history of mental illness, drug abuse, hospitalization and suicidal tendencies;" (4) governmental interference predicated on the PCRA court's action of allegedly "thwart[ing] [Petitioner's] request to develop a full record" in support of his ineffectiveness claim in connection with the court's order that he file a Rule 1925(b) statement and subsequent conclusion that he failed to do so; and (5) cause and prejudice based on the allegation that the PCRA court "misconstrued the record" by "giving more than one court order for [P]etitioner's 1925(b) statement" while refusing to acknowledge the court's alleged "agreement with [P]etitioner's counsel" to extend the deadline for filing the statement.   <u>See</u>

Petition, p. 9-10, 10A.

On May 4, 2007, this case was referred by the Honorable Marvin Katz for preparation of a Report and Recommendation. Petitioner filed a Memorandum of Law in support of his Petition on September 26, 2007.  The Response was filed on February 12, 2008.  Respondents contend that the Petition is time-barred, the principles of equitable tolling do not apply to excuse the untimeliness of the Petition, and this case should be dismissed with prejudice and without an evidentiary hearing.  Petitioner filed a Reply on March 25, 2008.  On April 11, 2008, Respondents filed a Response to Petitioner's Reply.  By Order dated April 15, 2008, this case was reassigned from the calendar of the Honorable Marvin Katz to the calendar of the Honorable Stewart Dalzell.

II.   **DISCUSSION**

    A.   **The Federal Habeas Corpus Petition at Issue Is Statutorily Time-barred.**

Petitioner's case must be decided pursuant to the terms of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which was enacted April 24, 1996.  Pub.L. 104-132, 110 Stat. 1214.  Section 104(2) of the AEDPA amended 42 U.S.C. section 2254, the statute under which this Petition was filed, requires that federal courts give greater deference to a state court's legal determinations.  The AEDPA also amended 28 U.S.C. section 2244, to require that a strict one-year period of

limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.[5]  In this case, the applicable starting point to examine the limitation period is the latest date on which the judgment of sentence became final, either by the conclusion of direct review or the expiration of the time for seeking such review.  See 28 U.S.C. § 2244(d)(1).

Petitioner's judgment of sentence became final on May 25, 1998, when his time for filing a petition for allowance of appeal with the Pennsylvania Superior Court expired.  See 28

---

[5]     28 U.S.C. section 2244 requires that:

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  If direct review of a criminal conviction ended prior to the AEDPA's effective date, a prisoner has one year subsequent to the April 24, 1996 effective date to properly file a habeas action.  Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).

U.S.C. § 2244(d)(1)(A); 42 Pa. C.S.A. § 9545(b)(3); Pa. R.A.P.
903 (allowing thirty days after the entry of an order to file an
appeal in the Pennsylvania Superior Court).  Accordingly, the
one-year time limit for Petitioner to timely file a federal
Petition for Writ of Habeas Corpus began on May 25, 1998 and he
had until May 25, 1999 to timely file a federal Petition.[6]
Petitioner did not meet this deadline and instead waited more
than three years after this limitation period had passed before
filing his first PCRA petition on September 5, 2003.  After the
state courts' review of his first PCRA petition concluded on May
31, 2006, when the Pennsylvania Supreme Court denied *allocatur*,
Petitioner waited another three months and then filed a second
PCRA petition in August of 2006, which was dismissed by the PCRA
court on April 3, 2007.  Petitioner did not file his federal
habeas corpus Petition until April 18, 2007.  Because the
Petition in this case was filed almost eight years after the

---

[6]     In their response, Respondents correctly assert that Petitioner is
not entitled to a new, extended deadline for the AEDPA's limitation period
pursuant to 28 U.S.C. § 2244(d)(1).  Specifically, Respondents aver that
Petitioner has failed to demonstrate that state action prevented the timely
filing of his habeas action.  28 U.S.C. § 2244(d)(1)(B).  Second, Respondents
assert that the claim alleged in the Petition does not rely on a new rule of
federal constitutional law of retroactive application.  28 U.S.C. §
2244(d)(1)(C).  Finally, Respondents contend that Petitioner has not made a
showing that the factual predicate of his complaint was not discoverable
through the exercise of due diligence long ago. 28 U.S.C. § 2244(d)(1)(D).
Although we agree with the reasoning of Respondents, we also note that
Petitioner concedes that he is not entitled to the benefit of any alternate
triggering dates set forth in 28 U.S.C. § 2244(d)(1).  See Reply, p. 7.

limitation period expired, it is statutorily time-barred.[7]

**B.    The Federal Habeas Corpus Petition at Issue is Not Eligible for Statutory or Equitable Tolling.**

        The AEDPA's one-year statute of limitations is subject to both statutory and equitable tolling.  28 U.S.C. § 2244(d) (enumerating statutory tolling provisions); <u>Merritt v. Blaine</u>, 326 F.3d 157, 161 (3d Cir.), <u>cert.</u> <u>denied</u>, 540 U.S. 921 (2003) (holding AEDPA's time limit is subject to the doctrine of equitable tolling, a judicially crafted exception).  The limitation period will be statutorily tolled for the time during which a "properly filed" application for state post-conviction or other collateral review is pending.  <u>See</u> 28 U.S.C. § 2244(d)(2).  The limitation period will be equitably tolled when the principles of equity would make the rigid application of a limitation period unfair.  <u>Jones v. Morton</u>, 195 F.3d 153, 159 (3d Cir. 1999).  However, if a PCRA petition is untimely, it is not considered properly filed in order to toll the AEDPA one-year statutory time period.  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 417 (2005).

        1.    Statutory Tolling

        With respect to statutory tolling, Respondent contends that Petitioner is ineligible because both of his PCRA petitions

---

        [7]    Petitioner concedes that his federal habeas corpus Petition is untimely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).  <u>See</u> Reply, p.6-7.

were filed after the AEDPA deadline expired, rendering 28 U.S.C. § 2244(d)(2) irrelevant for the purposes of statutory tolling. Respondents further assert that even if the AEDPA limitation period had not expired before Petitioner's PCRA petitions were filed, their own untimeliness would preclude statutory tolling. See 28 U.S.C. § 2244(d)(2) (providing for statutory tolling during pendency of "properly filed application for State post-conviction or other collateral review"). See also Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005)(untimely state habeas petition is not "properly filed" for purposes of Section 2244(d)(2)). Based on the foregoing, we conclude that Petitioner is not entitled to statutory tolling pursuant to 28 U.S.C. § 2244(d)(2). Further, we note that Petitioner concedes in his reply that he is not eligible for statutory tolling. See Reply, p. 7.

             2.  Equitable Tolling

        This Court must next examine whether the AEDPA statute of limitations should be *equitably* tolled to consider the Petition timely filed. Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003)(citing Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617-618 (3d Cir. 1998)(citation omitted). Courts must be sparing in their use of equitable tolling. Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999). In fact, the United

States Court of Appeals for the Third Circuit has held that equitable tolling is proper "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)(citation omitted).  The Petitioner "must show that he . . . 'exercised reasonable diligence in investigating and bringing [his] claims.'  Mere excusable neglect is not sufficient." Miller, 145 F.3d at 618 (quoting New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997) and citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

The Third Circuit has set forth the following three circumstances in which equitable tolling is permitted: (1) if the [Respondent] has actively misled the [Petitioner]; (2) if the [Petitioner] has in some extraordinary way been prevented from asserting his rights, or (3) if the [Petitioner] has timely asserted his rights mistakenly in the wrong forum. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001), cert. denied, 534 U.S. 944 (2001)(citing Jones, 195 F.3d at 159 (citations omitted)).  "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." Fahy, 240 F.3d at 244.  The habeas petitioner bears the burden of demonstrating both his entitlement to equitable tolling and his

11

due diligence.  Pace, 544 U.S. at 418; Cooper v. Price, 82
Fed.Appx. 258, 260 (3d Cir. 2003); Brown v. Cuyler, 669 F.2d 155,
158 (3d Cir. 1982); United States v. Soto, 159 F.Supp.2d 39, 45
(E.D. Pa. 2001) (Van Antwerpen, J.).

        Petitioner contends that he is entitled to equitable
tolling in this matter as a result of governmental interference
and a mental impairment.  With respect to his claims of
governmental interference, Petitioner explicitly avers that while
he was housed at the Houtzdale correctional facility, he was
denied access to the law library and prohibited paralegal
assistance.  See Petition, p. 9.  In addition, Petitioner
asserts, as a second form of governmental interference, that the
PCRA court thwarted his request to develop a full record with
respect to his ineffective assistance of counsel claim.[8]  See
Petition, p. 9-10, 10A; Memorandum of Law, p. 3-4.  Finally, with
respect to his alleged mental impairment, Petitioner contends

_____

        [8]     As more fully explained by the Respondents:

                The second form of 'governmental interference' alleged
                by Petitioner is his assertion that the PCRA court
                supposedly 'thwarted [his] request to develop a full
                record' on his ineffectiveness claim in connection
                with the court's order that he file a Rule 1925(b)
                statement and subsequent conclusion that he failed to
                do so (Petition ¶ 12(D), at 9-10, 10[a]; Memorandum of
                Law at [3-4]).  See also id. ¶ 12, at [10a]) (asserting
                that PCRA court 'misconstrued the record' by 'giving
                more than one court order for [P]etitioner's 1925(b)
                statement' while refusing to acknowledge court's
                alleged 'agreement with [P]etitioner's counsel' to
                extend deadline for filing the statement).

See Response, p. 12.

that he suffers from mental retardation by virtue of his low IQ. See Petition, p. 9; Memorandum of Law, p. 1-18; Reply, p. 8-13. Respondents aver that Petitioner has not demonstrated that equitable tolling could apply to any portion of the AEDPA's limitation period, whether on the basis of alleged governmental interference or Petitioner's alleged mental impairment.

With respect to the first claim of governmental interference, we note, as do Respondents, that Petitioner's allegation that he was denied both access to the law library and paralegal assistance was unspecified and unaccompanied by any explanation or support.  As noted above, a habeas petitioner bears the burden of demonstrating his entitlement to equitable tolling.  Pace, 544 U.S. at 418.  Because Petitioner has failed to provide any support for this allegation, we conclude that it is not a proper basis to permit equitable tolling.[9]

---

[9]     We also find persuasive the following cases cited by Respondents in their responsive brief:

> Bacon v. Carroll, No. 06-cv-519, 2007 WL 2727168, at *3 (D.Del. Sept. 17, 2007) (petitioner's "conclusory and unsupported statement regarding counsel's alleged failure to help him obtain the trial transcripts" insufficient to permit equitable tolling); Molina v. Hendricks, No. 04-cv-4191, 2006 WL 1286215, at *5 (D.N.J. May 5, 2006) (equitable tolling unavailable where petitioner "has asserted no more than a bare allegation" in support of demand therefore); Collingwood v. Snyder, No. 00-cv-783, 2002 WL 1446702, at *4 (D.Del. June 28, 2002) (no equitable tolling based on prisoner's claim that his "legal stuff" was stolen absent explanation why documents were needed to prepare applications for either state or federal habeas relief).

See Response, p. 15.

Regarding Petitioner's second claim of governmental interference, i.e. the PCRA court's alleged improper refusal to accept his Rule 1925(b) statement, we find that any alleged interference by the PCRA court with respect to his first state habeas petition, which was untimely filed in September of 2003, would not affect the timeliness of his federal habeas petition because the AEDPA deadline had passed more than three years earlier, in May of 1999. As with Petitioner's first claim, we conclude that this claim of governmental interference does not warrant a finding that equitable tolling should apply to render the Petition timely.

Petitioner's final assertion is that he is entitled to equitable tolling as a result of his suffering from mental retardation. As relied upon by the parties in this case, we agree that the Third Circuit has held that ongoing mental incompetency, coupled with attorney abandonment, may toll the AEDPA statute of limitations in some circumstances. Nara v. Frank, 264 F.3d 310 (3d. Cir. 2001), overruled in part on other grounds, Carey v. Saffold, 536 U.S. 214 (2002). In so doing, however, the Court cautioned that "mental incompetence is not a per se reason to toll a statute of limitations." Id. at 320. Instead, "the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition." Id. The Third Circuit has not "held that 'mental

14

health problems,' an undefined and expansive category, constitutes a basis for equitable tolling" in and of itself. United States v. Harris, 268 F. Supp. 2d 500, 506 (E.D. Pa. 2003) (Dalzell, J.)(equitable tolling requires "an inability to pursue one's legal rights" and "a nexus between the petitioner's mental condition and her inability to file a timely petition").

Applying the Third Circuit's ruling in Nara, our colleagues in this district have determined that "a mental condition that burdens but does not prevent a prisoner from filing a timely petition does not constitute 'extraordinary circumstances' justifying equitable tolling." Harris, 268 F. Supp. 2d at 506. See also Clapsadl v. Shannon, No. 02-CV-4621, 2003 U.S. Dist. LEXIS 22252, at *5 (E.D. Pa. 2003) (Surrick, J.) (same).[10] Accordingly, "[e]quitable tolling may be appropriate because of petitioner's mental illness, but only when condition made it impossible to file a petition on time." Heath v. Commonwealth, C.A. Nos. 06-4787, 07-1766, 07-3013, 2007 WL 2207776, at *3 (E.D. Pa. July 27, 2007) (Sánchez, J.) (internal quotations and citation omitted).

As indicated above, Petitioner essentially contends that his alleged mental retardation precluded him from filing a

---

[10]     The court determined that equitable tolling did not apply because Petitioner had failed to demonstrate any relationship between his full scale IQ of 71 and his failure to timely file his petition.  Clapsadl, No. 02-CV-4621, 2003 WL 22871663, at *1 (E.D. Pa. 2003)

timely federal habeas petition, and, therefore, he is entitled to an award of equitable tolling to render his Petition timely.  See Petition, p. 9; Memorandum of Law, p. 1-18; Reply, p. 8-13. After closely reviewing all of the documents and exhibits submitted in this case, however, we conclude that Petitioner has not provided sufficient evidence to demonstrate that he suffers from mental retardation or a mental illness, or that such a disorder prevented him from pursuing his claims.

In an attempt to support his claim that he suffers from mental retardation, Petitioner provided this court with the following documents: a Psychological Assessment Report prepared by Alan M. Bennett on July 21, 2006;[11] records from the Commonwealth of Pennsylvania Department of Corrections dated May 2005 through July 2005;[12] an affidavit of his mother, Gwendolyn Toler; the transcript from his sentencing hearing which references a report prepared by Allan M. Tepper, J.D., Psy. D.; and an affidavit of fellow inmate Richard M. Harris.

---

[11]    The records submitted by Petitioner also include a Mental Health Informed Consent Document dated July 14, 2006, which document indicates that Petitioner knowingly consented to meet with "psy staff" for the purpose of treatment and evaluation.  Based on the date of this document, this Court believes that this document was executed in conjunction with the assessment performed by Dr. Bennett on July 14, 2006, the results of which were contained in Dr. Bennett's report of July 21, 2006.

[12]    Although the records provide that Petitioner had been experiencing suicidal thoughts for several days, the last record, dated July 5, 2005, indicates that Petitioner had no intention of self harm, but was just frustrated over his current situation.  See Exhibits attached to Petitioner's Memorandum.

According to the Psychological Assessment Report dated July 21, 2006, Dr. Bennett interviewed Petitioner at the request of Petitioner's counselor because the results of the evaluation needed to be included in a packet that was being sent to the courts.  See Exhibits attached to Petitioner's Memorandum.  In rendering his opinion, Dr. Bennett commented that Petitioner was currently focused on his court appeals and was hoping to get his sentenced reduced.  As Respondents correctly note, this report indicates that Petitioner displayed intellectual competence during the interview by handling himself in a "controlled" and "focused" manner.

As a result of the evaluation, Dr. Bennett diagnosed Petitioner with major depressive disorder-recurrent[13] and opined that although he had a mental health history, he did not presently require any mental health services.  No diagnosis of mental retardation was made.  In fact, Dr. Bennett determined that Petitioner's IQ was 80 and his intellectual rating was low average.

With respect to the sentencing hearing transcript, we note that although defense counsel advised the court that

---

[13]    Courts in this district have determined that "depression, a serious mental illness, has been held to be a common fact of prison life and therefore not, without more, a sufficient basis for tolling."  See Wilson v. Stickman, Nos. 03-CV-699, 03-CV-953, 2005 WL 1712385, at *3 (E.D. Pa. July 21, 2005)(Dubois, J.)

Petitioner had an IQ of 63,[14] defense counsel expressed skepticism that the Petitioner suffered from mental retardation. In fact, defense counsel explained that Petitioner was "attempting to get his G.E.D. in the prison system" and had earned "achievement awards" for his participation in math class and computer studies.  Defense counsel also told the court that he believed it was "quite possible . . . that the I.Q. . . . may not be from any kind of organic problem, but simply an environmental problem" and that the Petitioner "just did not have the wherewithal to achieve what many other people achieve." Defense counsel also advised the court that Petitioner had "received a number of awards for basketball, track, and football," argued that Petitioner was capable of achievement "when he applies himself," and stated that Petitioner recognized his current situation and sought to "change his life" by attempting to obtain his G.E.D.  See Exhibits attached to Petitioner's Reply, Transcript at p. 3-5, 8-9.

In addition, and as correctly noted by Respondents in their brief, we find that the sentencing hearing transcript further undermines Petitioner's allegation of incapacity due to mental retardation because of his own display of coherence and

---

[14]   Although the Petitioner has consistently represented in his court filings that Dr. Tepper determined that he had an IQ of 63, a closer look at the actual report prepared by Dr. Tepper on September 30, 1997 shows otherwise.  See Exhibit EE attached to Respondents' Response to Petitioner's Reply.  The report of Dr. Tepper is discussed *infra*.

intelligence during his exchange with the sentencing judge.  More specifically, it is evident that Petitioner fully comprehended his situation when he explained to the court why he had previously lied to the pre-sentence investigator:

> THE COURT: . . . Did you commit the four robberies?
>
> THE DEFENDANT: Yes, I did, Your Honor.
>
> THE COURT: Well, why did you tell the presence investigator that you denied — I mean, that you did not do them?
>
> THE DEFENDANT: I was facing fifty to a hundred years.

See Respondents' Response to Petitioner's Reply, p. 4-5.

We note further that the only prison records provided by Petitioner, i.e. records from the Commonwealth of Pennsylvania Department of Corrections, pertain to suicidal thoughts he allegedly experienced during the summer of 2005, which neither demonstrate his inability to file legal documents at any time nor establish his inability to do so during the AEDPA limitations period in particular.

Although Petitioner attached affidavits of his mother, Gwendolyn Toler, and fellow inmate Richard M. Harris, in an effort to support his claim of mental retardation, we find, based on our review of all of the documents submitted, that Petitioner

has failed to attach any educational records, prison records, medical records, or any other records which provide objective support for his allegation that he suffers from mental retardation or which establish that he was mentally incompetent during the AEDPA limitations period.

Finally, in their response to Petitioner's reply, Respondents assert that certain additional reports, which were not supplied by Petitioner, further contradict Petitioner's allegation of mental retardation as well as his suggestion that an evidentiary hearing would be appropriate in this case.  More specifically, Respondents attach the following three documents which were submitted to the state court at the time of Petitioner's sentencing: (1) a presentence investigation report dated April 16, 1998; (2) a March 12, 1998 mental health evaluation prepared by Luz Perez-Rocha, M.D.; and (3) a September 30, 1997 report prepared by Dr. Tepper.  See Respondent's Response to Petitioner's Reply, Exhibits CC-EE.

As accurately noted by Respondents, the presentence investigation report indicates that Petitioner supplied the presentence investigator with highly creative explanations for his alleged nonculpability for three of the four robberies.  See Respondent's Response to Petitioner's Reply, p. 6, Exhibit CC, p. 2.  These creative explanations greatly undermine Petitioner's assertion that he suffers from mental retardation.  In addition,

20

we note that even though this report was prepared after Dr. Tepper's assessment, there is no mention of any retardation or developmental problems in the "Educational History" or "Physical and Mental Health History" sections of the report.  To the contrary, these sections of the report refer only to some school disciplinary problems and certain mental difficulties relating to hyperactivity, the trauma associated with a shooting, and persistent drug abuse. See Respondent's Response to Petitioner's Reply, p. 6, Exhibit CC, p. 2-3.

The mental health evaluation prepared by Dr. Perez-Rocha at the request of the sentencing court is likewise unsupportive of Petitioner's allegations of incapacity due to mental retardation or any mental illness, for that matter.  To the contrary, following an evaluation performed on March 11, 1998, which we note occurred approximately six months after Dr. Tepper authored his report, Dr. Perez-Rocha concluded that Petitioner "seems to be functioning within the normal intellect." See Respondent's Response to Petitioner's Reply, p. 7, Exhibit DD, p. 1-2.  Dr. Perez-Rocha also found that Petitioner "does not suffer [from] any major psychiatric disorder which may interfere with the sentencing options."  See Respondent's Response to Petitioner's Reply, p. 7, Exhibit DD, p. 2-3.

Contrary to Petitioner's repeated allegation that his I.Q. was 63 or less during the AEDPA limitations period, the

21

report of Dr. Tepper actually shows that Petitioner's full-scale
I.Q. was 76.[15]  Further, Dr. Tepper explicitly reported that
Petitioner understood the nature of the evaluation and "made eye
contact, and spoke in a clear, coherent voice" and "was able to
follow the examiner's questions and requests" during the course
of the evaluation session.  <u>See</u> Respondent's Response to
Petitioner's Reply, p. 7, Exhibit EE, p. 2.  Dr. Tepper also
stated that although there was a reported history of mental
difficulties, the exact nature and extent of those difficulties
was unclear to him.  <u>See</u> Respondent's Response to Petitioner's
Reply, Exhibit EE, p. 3.  At no time did Dr. Tepper definitively
opine that Petitioner suffered from mental retardation.

---

[15]     Dr. Tepper's report provides, in pertinent part, as follows:

> On the Quick Test Intelligence Inventory, an overview
> of verbal receptive language abilities, Mr. Milas
> achieved an I.Q. score of 76, falling within the
> Borderline Mentally Retarded range of intelligence.
> This score is consistent with a past reported
> intelligence score of 76.  It should be noted that
> this particular instrument draws more heavily upon
> verbal abilities, and thus it is possible that Mr.
> Milas may possess higher level non-verbal functioning.
> On the reading subtest of the Wide Range Achievement
> Test - Third Revision, Mr. Milas achieved a second
> grade level, and a standard score of 63.  This
> diminished reading level is consistent with past
> reported school difficulties.

<u>See</u> Respondent's Response to Petitioner's Reply, Exhibit EE, p. 2.

     Although Dr. Tepper mentioned past reported school difficulties in
his report, he also specifically noted that Petitioner's school records were
unavailable for his review.  We note, however, that the individual who
prepared the presentence investigation report, which was prepared after Dr.
Tepper's report, explicitly noted that she had reviewed information from
Frankford High School and Daniel Boone High School.  Notably, no references to
mental retardation were noted in either the presentence investigation or
mental health evaluation reports which were submitted to the sentencing court.

Given all of the evidence submitted, we find that Petitioner has failed to make the threshold proffer necessary to justify this Court's further consideration of his demand for equitable tolling,[16] much less to hold an evidentiary hearing. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 n.12 (3d Cir. 1991) (petitioner not entitled to evidentiary hearing based on "bald assertions and conclusory allegations"); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) (same), cert. denied, 484 U.S. 946 (1987); Brown, 669 F.2d at 158 (petitioner bears burden as to all factual and procedural requirements).  See generally Pace, 544 U.S. at 418 (petitioner bears burden of demonstrating both entitlement to equitable tolling and his due diligence).  See also Wilson, 2005 WL 1712385, at *3 (declining to award equitable tolling based on alleged psychiatric disorder or mental retardation where petitioner cited "no evidence (e.g.,

---

[16]     In determining whether extraordinary circumstances exist to warrant the application of equitable tolling, this Court must also examine Petitioner's due diligence in pursuing the matter under the specific circumstances he faced.  Traub v. Folio, No. 04-386, 2004 WL 2252115, at *2 (E.D. Pa. Oct. 5, 2004) (citing Schleuter v. Varner, 384 F.3d 69 (3d Cir. 2004))(affirming dismissal of habeas petition as time barred and not entitled to equitable tolling because lengthy periods of time had elapsed following his conviction before he sought relief).  It is Petitioner's burden to show that he acted with reasonable diligence and that extraordinary circumstances caused his petition to be untimely.  Id.

Under the circumstances of this case, Petitioner did not act in a reasonably diligent fashion because a reasonably diligent petitioner would have acted promptly to preserve his rights not only in the state court, but also in this Court.  Petitioner fails to allege any steps that he took to timely file the instant federal habeas petition.  None of the circumstances which warrant equitable tolling apply in this case to render the instant Petition timely.  Fahy, 240 F.3d at 244.  Accordingly, the Petition is statutorily time-barred.

expert testimony, prison medical records)"); <u>Harris</u>, 268 F. Supp.2d at 506 (finding claim of mental incompetence inadequately supported for equitable tolling purposes even where petitioner presented expert opinion); <u>Boyd v. Gillis</u>, No. 02-CV-8034, 2004 WL 2397296, at *4-5 (E.D.Pa. Oct. 25, 2004) (Padova, J.) (mental incompetence allegation unproven for equitable tolling purposes despite, *inter alia*, "extensive psychiatric reports and evaluations"); <u>Clapsadl</u>, 2003 WL 22871663, at *2 (declining to award equitable tolling where there was "simply nothing in [the] record to support a claim of mental incompetence").

In summary, with respect to Petitioner's alleged mental incompetence, we conclude that Petitioner submits insufficient evidence that he suffers from a mental illness or mental retardation, or that such a disorder prevented him from pursuing his claims in a timely fashion.  As a result, Petitioner's alleged condition does not constitute an extraordinary circumstance warranting equitable tolling.[17]

---

[17]   To the extent that Peitioner's request for equitable tolling otherwise rests on his alleged illiteracy and unfamiliarity with legal procedure, we adopt the reasoning of the Respondents set forth on page nine of their Response to Petitioner's Reply, and conclude that these allegations do not provide grounds for equitable tolling.  As Respondents indicate

> The Third Circuit has repeatedly emphasized that illiteracy, ignorance of the law, and similar concerns are not a permissible basis for the award of equitable tolling. <u>See</u>, <u>e.g.</u>, <u>Merritt v. Blaine</u>, 326 F.3d 157, 170 (3d Cir. 2003) (no equitable tolling based on confusion regarding law); <u>Jones v. Morton</u>, 195 F.3d 153, 160 (3d Cir. 1999) (petitioner's "misunderstanding . . . is insufficient to excuse his failure to comply with the statute of limitations");

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the instant Petition is time-barred.  The Petition is statutorily time-barred, and must be denied with prejudice and dismissed without an evidentiary hearing.

For all of the above reasons, I make the following:

---

School District of Allentown v. Marshall, 657 F.2d 16, 21 (3d Cir. 1981) ("ignorance of the law is not enough to invoke equitable tolling"); Figueroa v. McFarland, No. 04-CV-4724, 2005 WL 2044906, at *5 (D.N.J. Aug. 23, 2005) ("ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse untimely filing"); Alexander v. Klem, No. 04-cv-2174, 2005 WL 834871, at *4 (E.D.Pa. April 8, 2005) (ignorance of law, even for pro se prisoner, is not generally "extraordinary circumstance").

See Respondent's Response to Petitioner's Reply, p. 9.

## RECOMMENDATION

AND NOW, this 17th day of April, 2008, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. section 2254 should be DENIED with prejudice and DISMISSED without an evidentiary hearing. There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to timely file objections may constitute a waiver of any appellate rights.


BY THE COURT:


_/s/ Henry S. Perkin_
HENRY S. PERKIN
United States Magistrate Judge

26